# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL NO. 1:04CV44
### (4:96CR53)

| | |
|---|---|
| OWEN ODMAN,<br>a/k/a Owen Oddman,<br><br>  Petitioner,<br><br>Vs.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | )<br>)<br>)<br>)<br>)<br>) **MEMORANDUM AND ORDER**<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on the Petitioner's motion pursuant to

28 U.S.C. § 2255 to vacate, set aside or correct his sentence, as well as

numerous other filings. No response is necessary from the Government.

## I. STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on

the grounds that it is in violation of the Constitution or United States law, was

imposed without jurisdiction, exceeds the maximum penalty, or is otherwise

subject to collateral attack. **28 U.S.C. § 2255.** However,

[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.** The Court, having reviewed the record of criminal proceedings, enters summary dismissal for the reasons stated herein.

## II. PROCEDURAL HISTORY

On July 9, 1996, the Petitioner was indicted along with 14 co-defendants for conspiracy to manufacture, distribute and possess with intent to distribute cocaine and cocaine base. **Bill of Indictment, filed July 9, 1996.** The indictment alleged that the conspiracy began in November 1994 and continued through June 1996. *Id.* Petitioner was also charged with substantive counts of possession of cocaine base, money laundering and a separate conspiracy count involving only one co-conspirator. *Id.* A warrant for his arrest issued on July 12, 1996, however, the Petitioner left the United States and was not arrested until October 2000.[1] **Execution of Arrest**

---

[1] In this motion, the Petitioner claims he did not return to the United States until 2000.

**Warrant, filed October 4, 2000.** After his arrest and removal to this District, the Petitioner moved to dismiss the indictment based on violations of the Speedy Trial Act and the constitutional right to a speedy trial. A hearing on this motion was held on January 19, 2001, during which the Petitioner testified.

Petitioner testified that after having lived in the United States for 10 years, during which time he used the alias of Roderick Little, he returned to his native Jamaica in November 1995. **Order, filed January 23, 2001.** In March 1997, the Petitioner returned to the United States using the alias of Charles Llewelyn, a name chosen because he was able to purchase a Visa in that name. *Id.* In January 2000, Petitioner was arrested, as Charles Llewelyn, in the Southern District of Florida for drug violations. *Id.* Using that alias, Petitioner entered a plea of guilty to those charges in May 2000 and was sentenced in September 2000 to 110 months incarceration for conspiracy to possess with intent to distribute cocaine. *Id.* In October 2000, the Petitioner was brought to this District for prosecution on the outstanding 1996 indictment. *Id.*

On January 9, 2001, the Government superseded the original bill of indictment, dropping all charges except the conspiracy charge and alleging the quantities of drugs involved in the conspiracy as elements of the offense. **Superseding Bill of Indictment, filed January 9, 2001.** The Petitioner was convicted by jury verdict on January 23, 2001. **Verdict Sheet, filed January 23, 2001.** On February 22, 2001, his motion for a new trial was denied. **Order, filed February 22, 2001.** On July 26, 2001, the undersigned sentenced the Petitioner to 360 months imprisonment to run consecutive to the sentence imposed in the Southern District of Florida. **Judgment of Conviction in a Criminal Case, filed August 6, 2001.**

The Petitioner appealed the conviction and sentence, and on September 25, 2002, the United States Fourth Circuit Court of Appeals affirmed both in all respects. ***United States v. Odman***, 47 Fed. Appx. 221 (4th Cir. 2002), ***cert. denied,*** 537 U.S. 1211, ***reh'g denied***, 538 U.S. 995 (2003). The Fourth Circuit specifically held: (1) the superseding bill of indictment was filed within the five year statute of limitations; (2) the undersigned did not err in allowing the Petitioner to represent himself at trial; (3) the verdict form was not defective for failing to have the jury attribute a specific amount of drugs to

the Petitioner as opposed to the conspiracy; (4) no violation of the Speedy
Trial Act occurred; (5) the Petitioner was properly enhanced as a leader and
his criminal history was properly assessed; (6) the indictment was not
improperly amended by striking erroneous information concerning a prior
conviction of the Petitioner; (7) there was sufficient evidence to support the
conviction; and (8) there was neither prosecutorial misconduct nor a violation
of the Vienna Convention. *Id.*

On August 19, 2003, the undersigned denied the following motions: (1)
to disclose grand jury records; (2) for judicial recusal; (3) for a new trial; (4) a
supplemental motion for a new trial; (5) for a new trial based on prosecutorial
misconduct; (6) to preserve the record; (7) for appointment of counsel; (8) to
strike; (9) for judgment on the pleadings; (10) for grand jury records; (11) for
a hearing; (12) and a complaint for violations of federal laws. **Order, filed
August 19, 2003.** Because of the Petitioner's prolific and abusive filings, the
undersigned prohibited him from any future filings with the exception of one
motion pursuant to 28 U.S.C. § 2255. *Id.* On March 11, 2004, this § 2255
motion was timely filed. Petitioner's motion for a writ of *mandamus* to require

the undersigned to act on that motion was denied by the Fourth Circuit during this calendar year. *In re Odman*, 138 Fed. Appx. 536 (4th Cir. 2005).

## III. DISCUSSION

Petitioner's first argument is that he was denied effective assistance of counsel. In considering Petitioner's claims that he has not received adequate assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984). Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. *Id.* Thus, a defendant must show that counsel's performance fell below objective standards of reasonableness and, that but for his conduct, there was a reasonable probability the result would have been different. *Id.*, at 688; *Hill v. Lockhart*, 474 U.S. 52 (1985); *Fields v. Attorney Gen.*, 956 F.2d

**1290 (4ᵗʰ Cir. 1992).**  If the defendant fails to make the first showing, there is no need to consider the second.  **Strickland, supra.**

Petitioner claims his attorney was ineffective because he purportedly failed to subpoena three witnesses: Eric Wheeler, Novellete Foreman and Theresa Oates.  On the morning the trial began, the Petitioner's attorney advised the Court that the Petitioner wanted to conduct the cross-examination of Government witnesses instead of having his attorney do so.  Yet, the Petitioner wanted his counsel to remain in the case.  The undersigned declined that request.

> That . . . should indicate to you, Mr. Odman, the idiocy of attempting to represent yourself when you have one of the best attorneys in the State of North Carolina appointed by the Court to represent you.  But I'm not going to let you make a farce out of the proceedings before this Court or delay further proceedings before this Court.  Now, you either go *pro se* or you go with Mr. Devereux, whichever you prefer.

**Transcript of Jury Trial Proceedings, Vol. III, at 99-100.**

Although the Petitioner initially decided to have Mr. Devereux continue as his attorney, after the prosecutor examined the Government's first witness, the Petitioner opted to represent himself.  The Fourth Circuit addressed this issue on direct appeal and found that the "record in this case establishes that

the district court had ample reason to find that Odman's decision [to represent himself] was knowing and intelligent." **Odman, 47 Fed. Appx. at 223.** Since the Petitioner chose to represent himself, it was his obligation to subpoena any witnesses whom he wanted to present during any defense portion of the trial. The Court made that point clear to the Petitioner during the trial. **Trial Transcript, Vol. III, at 351.** This is the same ruse which the Petitioner attempted at trial, *i.e.,* although he choose to act as his own attorney, he attempted to "set up" his previous counsel in order to create error. The Court rejected those attempts at trial and does so again. "One who exercises the right of self-representation cannot contend that he received ineffective assistance of counsel." **Peoples v. United States, 403 F.3d 844, 849 (7ᵗʰ Cir.),** *cert. denied,* **126 S. Ct. 421 (2005).**

Assuming *arguendo* that counsel should have subpoenaed these witnesses prior to the time that the Petitioner chose to represent himself, he fares no better. Petitioner claims that Eric Wheeler would have testified that he had no agreement with the Petitioner concerning drugs. Nonetheless, Petitioner recognizes that "[m]any of the government's witnesses testified about this 'agreement' between Petitioner and Wheeler." **Petitioner's**

**Memorandum of Law,** *attached to* **§ 2255 Motion, at 6.** That testimony was more than sufficient to show the Petitioner's role in the conspiracy and his agreements with co-conspirators.

Anthony Blackwood was one of the Government's witnesses. Novelette Foreman was at some point romantically involved with Blackwood and the Petitioner claims she would have testified that Blackwood perjured himself when he testified that he had dealings with the Petitioner after August 1995. *Id.* In fact, Blackwood testified that his relationship with the Petitioner ended in the late summer of 1995 when they had a disagreement over money.[2] **Trial Transcript, Vol. III, at 190.** Thus, Foreman's testimony would have been futile.

The Petitioner also claims that Theresa Oates would have testified that Special Agent John Felton of the Federal Bureau of Investigation (FBI), who did testify at the trial, tried to purchase her testimony and threatened her. However, counsel is not ineffective when there is a failure to subpoena alleged witnesses on allegations that are "vague, conclusory or palpably incredible[.]"

--------

[2]Blackwood also testified that on one occasion after that time he had a transaction with the Petitioner in either December 1995 or early 1996. **Trial Transcript, Vol. III, at 202.**

*Machibroda v. United States*, 368 U.S. 487, 495 (1962). Nor is the reviewing court obligated to consider such allegations when they are not supported by affidavits from the potential witnesses. *Sayre v. Anderson*, **238 F.3d 631, 635-36 (5th Cir. 2001);** *Koskela v. United States*, **235 F.3d 1148 (8th Cir. 2001);** *e.g.*, *Bruce v. United States*, **256 F.3d 592, 598 (7th Cir. 2001).** And, defense counsel has no duty to make an offer of inadmissible evidence, which would have been the case here. *United States v. Nersesian*, **824 F.2d 1294, 1321-22 (2d Cir. 1987).**

Moreover, the Petitioner's claims of ineffective assistance are ludicrous in the face of the record of questions asked by him. During his cross-examination of Tony Young, the Petitioner stated, "So, Mr. Young, is it safe for me to assume that I was not the only person supplying you with cocaine?" **Trial Transcript, Vol. III, at 133.** The Petitioner thus admitted involvement in the very conspiracy with which he was charged. And, the time frame posed to the witness was 1995, the period alleged in the indictment. *Id.***, at 132-33.** Therefore, any testimony by the purported witnesses about a lack of dealings with the Petitioner in 1995 would have been futile since the Petitioner, in the course of his questioning of the Government's witnesses,

admitted his involvement in the conspiracy during that time.  Moreover, the

Petitioner's questions to Young completely established his relationship with

Blackwood and other co-conspirators.  *Id.*, at 135-37 (Q:**"I sent Mr.**

**Blackwood to you four or five times?"  A:"Yes.");  139 ("I wasn't talking to**

**nobody but you on the phone.").**

Finally, in contrast to the Petitioner's claim that his attorney failed to

adequately investigate witnesses, defense counsel reported to the Court during

the trial that he had gone through the Government's entire open file, and

obtained, dictated and copied every statement of any witness who mentioned

the Petitioner.  **Trial Transcript, Vol. III, at 163.**  However, since the

Petitioner opted to proceed without the benefit of counsel, the attorney had no

further obligation toward the Petitioner regarding those matters.[3]

Petitioner also claims counsel should have objected to the presence of

the 21 U.S.C. § 851 notice in the superseding indictment.[4]  In addition to the

---

[3]The record discloses, however, that both former counsel and the Assistant
United States Attorney made every effort to provide the Petitioner with copies
of materials requested by him.

[4]In fact, defense counsel, who regularly appears in this Court, would have
been aware that the undersigned routinely redacts language in indictments
which refer to a defendant's prior convictions in order to avoid any undue
prejudice to that defendant.  That redaction is typically done just before the

fact that the Petitioner chose to proceed in a *pro se* capacity, the indictment

was redacted so that the notice was eliminated. And, the Fourth Circuit

affirmed this conduct on the part of the undersigned. ***Odman*, 47 Fed. Appx.**

**at 225 ("Due process is not offended when an amendment 'drop[s] from an**

**indictment those allegations that are unnecessary to an offense that is**

**clearly contained within it . . . .'" (quoting *United States v. Miller*, 471 U.S.**

**130, 144 (1985))).**

Next, the Petitioner claims that trial counsel was ineffective by failing to

obtain copies of the trial transcripts of co-conspirators who were tried during

the period of time when the Petitioner had left the United States and returned

to Jamaica. However, the Petitioner acknowledges in the motion the

numerous attempts by counsel to obtain copies of those transcripts. **See,**

**e.g., Trial Transcript, Vol. I, filed December 10, 2001, at 3; Trial Transcript,**

**Vol. III, at 103-04 ("I have attempted, as your Honor knows, to get**

**transcripts of [government witnesses'] testimony at prior proceedings, and in**

**the instance of several of them, Anthony Blackwood and several others, I**

**have spoken with the attorneys that represented them in prior proceedings.**

---

charging conference at the end of the trial. Thus, counsel would not have
raised the issue at the beginning of the trial.

**Now, the Government has provided us with open file discovery, and we have endeavored to provide Mr. Odman with interviews, or at least the officer's account of interviews, with most of the people we expect to see on the witness stand. I say that because the – these folks are in prisons throughout the Eastern United States, and interviewing them certainly is always a good idea if you can do it. And that's another reason . . . for granting the motion to continue."); 107-09; 165.** The undersigned ordered that they be made available to the defense on more than one occasion. The fact that not all of the transcripts were produced is through no fault of counsel. Indeed, since the Petitioner elected to represent himself, this is another instance in which he may not complain that defense counsel did not provide him with those transcripts.

Moreover, the Petitioner has not shown prejudice stemming from the unavailability of those transcripts. The Petitioner has attached to his motion copies of purported trial transcripts for other co-conspirators which are not identified or verified in any manner. In fact, one of those transcripts, which he claims is the previous testimony of April Lockhart, appears to be the testimony of a man. **See Exhibit 10,** *attached to* **Memorandum of Law.**

Thus, these excerpted portions of transcripts do not prove the prejudice of which the Petitioner claims. And, the evidence against the Petitioner at trial, coming as it did from the testimony of most of his co-conspirators, was overwhelming.

Petitioner's next argument is that the superseding indictment was duplicitous and counsel was ineffective for failing to move for its dismissal. The indictment charged a conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. **Superseding Bill of Indictment, filed January 9, 2001.** The indictment also specifically alleged that the conspiracy involved at least 5 kilograms of cocaine and 1.5 kilograms of cocaine base. *Id.* Petitioner claims that because the conspiracy charge included both cocaine and cocaine base, the indictment was duplicitous.

> The Supreme Court has expressly rejected the contention that such a count, containing allegations of a single conspiracy to commit two or more separate crimes, is duplicitous. The Court reasoned, "[t]he allegation in a single count of conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects."

*United States v. Marshall*, 332 F.3d 254, 262 (4th Cir.), *cert. denied*, 540 U.S. 1024 (2003) (quoting *Braverman v. United States*, 317 U.S. 49, 54

**(1942))**. Since the indictment was not duplicitous, counsel could not have been ineffective by failing to move for dismissal.

Petitioner also claims the superseding indictment was not returned in open court because the docket does not indicate the foreman returned it to a Magistrate Judge. Thus, he argues, counsel should have raised this objection.

Federal Rule of Criminal Procedure 6(f) requires that the grand jury foreperson, or the deputy foreperson, return the indictment to a Magistrate Judge in open court. This means merely that the foreperson present the indictment to the court while court is in session. *United States v. Thompson*, **287 F.3d 1244, 1250 n.2 (10ᵗʰ Cir. 2002)**. "[T]he handing of the indictment to the clerk and the entry of it on the record was all the [rule] ever intended." *Renigar v. United States*, **172 F. 646, 648-52 (4ᵗʰ Cir. 1909)**. Here, the superseding bill of indictment has been filed-stamped. The undersigned finds that this constitutes a return of the indictment in open court. To the extent that the Petitioner claims there is no proof that the foreperson actually went into open court and handed it to the clerk, the Court finds his argument based on nothing more than sheer speculation. *United States v. Jensen*, **76 Fed. Appx. 507, 509 (4ᵗʰ Cir. 2003)**. Moreover, the

undersigned takes judicial notice that the indictment was properly returned based on the signature of the foreperson and the Clerk's filed stamp. **United States v. Daychild**, 357 F.3d 1082, 1099 (9th Cir. 2004). Thus, counsel was not ineffective for failing to challenge the return thereof.

Petitioner also accuses his court-appointed appellate counsel of rendering ineffective assistance. His first complaint is that the appellate attorney should have accused trial counsel of ineffective assistance based on the denial by the undersigned of the Petitioner's motions to continue. Since it was the Court that denied any such motions, no blame may be laid at the feet of either trial or appellate counsel.

Petitioner also makes the following accusations against appellate counsel: (1) he failed to argue that the indictment was duplicitous; (2) he failed to argue that the indictment was not returned in open court; (3) he failed to challenge the Court's instruction to the jury which defined "intent" because that word was not in the indictment; (4) he failed to raise the issue of the Petitioner's withdrawal from the conspiracy; (5) he raised only a general *Brady*[5] issue instead of claiming that the Petitioner's co-conspirators had

---

[5]*Brady v. Maryland*, 373 U.S. 83 (1963).

participated in a "sting" operation; (6) he failed to raise the fact that none of the Petitioner's witnesses had been interviewed prior to trial; and (7) he failed to raise as error the fact that the trial forced the Petitioner to elect to proceed *pro se* or with counsel. Each of these claims is rejected for reasons stated above and *infra* and/or because the Fourth Circuit has addressed and rejected the same. ***Boeckenhaupt v. United States***, 537 F.2d 1182, 1183 (4th Cir. 1976); ***United States v. Rush***, 99 Fed. Appx. 489 (4th Cir. 2004); ***United States v. Nwankwo***, 2 F.Supp.2d 765, 772 (D. Md. 1998), *appeal dismissed*, 173 F.3d 426 (4th Cir. 1999).

The next section of the Petitioner's motion attacks trial errors allegedly committed by the undersigned, beginning with the refusal to continue the trial of the case. This, he claims, was error because the case had lain dormant for years, making it difficult for the Government to shepherd the discovery and for the Petitioner to review the same. It bears noting that the reason the case had been dormant was the Petitioner's voluntary absence from the country during the period of time when his co-conspirators and co-defendants were

prosecuted and tried.[6]  He was returned to this District in November 2000

and his trial did not begin until late January 2001.

> The denial of a continuance contravenes a defendant's Sixth
> Amendment right to counsel only when there has been "an
> unreasoning and arbitrary insistence upon expeditiousness in the
> face of a justifiable request for delay."  In order to prevail on this
> point, [Petitioner] is obliged to show, first, that the district court
> abused its discretion in denying the continuance motion, and
> second, that the ruling "specifically prejudiced" [his] case.

*United States v. Hedgepeth*, 418 F.3d 411, 423 (4th Cir. 2005) (quoting

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)) (other citations and quotations

omitted).  The Petitioner has not shown either prong.  In fact, after the jury

was selected in the Petitioner's case, it was continued for a two week period

during which counsel and the Petitioner were able to prepare for trial.  The

only prejudice suffered by the Petitioner came from his decision to represent

himself rather than to rely on the considerable talents of his court-appointed

counsel.

Petitioner also claims that he was tried within thirty days of the filing of

the superseding bill of indictment in violation of the Speedy Trial Act.  That

statute provides that "[u]nless the defendant consents in writing to the

---

[6]Although the issue was not adjudicated, it appears that the Petitioner was
a fugitive during this time.

contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel . . . ." **18 U.S.C. § 3161(c)(2).** The statute makes no mention of the date a superseding bill of indictment is filed or of the date a defendant is arraigned thereon. The fact that the Government obtained a superseding indictment on January 9, 2001, has no bearing on the date he first appeared with counsel, November 6, 2000. Thus, he was not forced to proceed to trial within thirty days of his first appearance with counsel. In short, the Speedy Trial Act does not require that the 30-day trial preparation period be restarted when a superseding indictment is filed. *United States v. Rojas-Contreras*, **474 U.S. 231 (1985);** *United States v. Vaughn*, **111 F.3d 610 (8th Cir. 1997);** *United States v. Correa-Ventura*, **6 F.3d 1070, 1074 (5th Cir. 1993);** *United States v. Karsseboom*, **881 F.2d 604, 607 (9th Cir. 1989);** *United States v. Gossett*, **877 F.2d 901 (11th Cir. 1989).**

Petitioner also claims the undersigned rushed the parties through jury selection, effectively denying him the opportunity to exercise peremptory strikes and thus failing to achieve a non-biased jury. The trial transcript contains 50 pages of jury selection and thereby disproves the allegation that

selection was rushed. **Trial Transcript, Vol. I, at 14-62.** Moreover, jury selection occurred in this case in the same manner as is the custom in this Court for all trials. This claim is, therefore, rejected as frivolous.

Petitioner renews his claim that the indictment was duplicitous, this time arguing that the verdict sheet failed to insure a unanimous verdict as to the two different charges he claims were alleged. As noted above, the crime with which the Petitioner was charged, and of which he was convicted, was conspiracy, not the substantive charges of distribution and possession. Moreover, the verdict sheet contained interrogatories which directed the jury to make specific findings as to the amount of cocaine and cocaine base involved in the conspiracy. The Court, therefore, rejects this claim as well.

The Petitioner's claim that the undersigned failed to properly poll the jury upon the return of the verdict is rejected as frivolous. The trial transcript clearly shows that the jury was polled and answered unanimously that their verdict was guilty. **Trial Transcript, Vol. IV, at 406.**

Despite the fact that the Fourth Circuit addressed and rejected the claim that the superseding indictment was time-barred by the statute of limitations, Petitioner raises it again in this motion. Having been addressed on direct

appeal, the Petitioner may not relitigate the issue on collateral attack.

**Boeckenhaupt, supra.** Moreover, the statute of limitations does not apply to

fugitives, a status which the Petitioner arguably had while he was in Jamaica.

**18 U.S.C. § 3290.**

The Petitioner also claims that the superseding indictment improperly

broadened the original indictment when the quantities of drugs involved in the

conspiracy were added. This argument has been squarely rejected by the very

case cited by the Petitioner in support of his argument. **See, United States v.**

**Garcia,** 268 F.3d 407 (6th Cir. 2001). The addition of drug quantities in a

superseding indictment does not materially broaden the original charges when

the defendant was on notice of the quantities from other evidence in the

original case. **Id.; accord, United States v. Butler,** 297 F.3d 505, 511 (6th

Cir. 2002), **cert. denied,** 538 U.S. 1032 (2003). Here, the information

providing the drug quantities was filed on August 1, 1996, thus, the

Petitioner's argument is futile. Moreover, while the Petitioner claims complete

ignorance of the existence of the indictment, he testified to continuing

contacts with co-defendants and FBI Special Agent Felton, the investigating

agent. **Order, filed January 23, 2001, at 1-2.** Petitioner maintained contact

with one of his co-defendants, Mary Potlow, because she was pregnant with his child. *Id.* In fact, Potlow told federal agents where the Petitioner was residing and supplied them with his mother's telephone number. *Id.* The Petitioner testified that Special Agent Felton called him twice at his mother's home in Jamaica in early 1996. *Id.*

Again, the Petitioner raises the issue of his purported withdrawal from the conspiracy, which was litigated on direct appeal. As previously noted, the Fourth Circuit has addressed and rejected this contention. The Petitioner may not renew it on collateral attack. *Boeckenhaupt, supra.* It does bear noting, however, that the Petitioner's sole ground in support of this contention is that he left the United States for Jamaica in late 1995. Leaving the country is not alone a sufficiently affirmative repudiation. The Petitioner quite easily could have, and apparently did, continue his involvement with the conspiracy from Jamaica. He has not produced any evidence of an affirmative repudiation communicated to his co-conspirators.

Likewise, the Petitioner's argument that the verdict sheet was defective because it did not provide the jury with an opportunity to answer whether

and/or when he withdrew from the conspiracy was addressed and rejected on

direct appeal. Thus, it may not raised again here. **Boeckenhaupt, supra.**

> The verdict form required the jury to determine whether Odman
> was guilty of participating in a conspiracy involving the specific
> threshold amounts of cocaine or crack that justify an enhanced
> sentence[.] The court instructed the jury that withdrawal is a
> defense to a charge of conspiracy if the defendant took some
> affirmative action indicating that he had repudiated the conspiracy
> or its goals. In convicting Odman, the jury demonstrated that it
> rejected his defense without any need for a special verdict form.

**Odman**, 47 Fed. Appx. at 223-24.

It is not clear whether the Petitioner also attacks the jury's verdict based

on the fact that they did not attribute a specific quantity of drugs to him, as

opposed to the conspiracy as a whole. In ruling on a § 2255 motion brought

by a defendant who was tried during the same criminal term as the Petitioner,

the undersigned has considered the case of United States v. Collins, 415

F.3d 304 (4th Cir. 2005). In that case, the defendant was indicted for

conspiring to distribute 50 grams or more of cocaine base. After his

conviction by jury verdict, he was sentenced to the mandatory 10 year

minimum sentence of 21 U.S.C. §§ 841(b)(1)(A) and 846. On appeal, he

claimed the court erroneously instructed the jury when, during deliberations, a

message came from the jury asking whether the quantity of drugs alleged in

the indictment, *i.e.*, 50 grams or more, applied to the defendant or to the conspiracy as a whole. The judge instructed the jury that the quantity applied to the entire group of conspirators. He gave no further or supplemental instruction. On appeal,

> Collins argue[d] that the district court erred in answering the jury's question. Collins contend[ed] that the jury should have been instructed that in order to hold [him] responsible for 50 grams or more of crack cocaine it must make one of two findings, either that (1) Collins himself was involved in the distribution of 50 grams of crack cocaine, or (2) other members of the conspiracy were involved in that amount, and those actions of coconspirators were both reasonably foreseeable and in furtherance of the jointly undertaken criminal activity, *see Pinkerton v. United States*, 328 U.S. 640 . . . (1946).
>
> • • •
>
> The most stringent penalty section under §841(b), §841(b)(a)(A), mandates a 10 year minimum sentence for an individual found guilty under §841(a) for . . . distributing . . . 50 grams or more of cocaine base. The Superseding Indictment contemplates this subsection by charging Collins with conspiring to distribute *50 or more grams* of cocaine base, commonly known as crack cocaine. Considering the statutory scheme outlined above, it is clear that the amount of narcotics attributable to a defendant dictates the period of incarceration for a defendant convicted of the substantive offense. When a defendant is charged and convicted for *conspiracy* to violate § 841(a), the important question of quantity becomes more difficult to interpret and apply. . . . [In *United States v. Irvin*, 2 F.3d 72 (4th Cir. 1993), the Fourth Circuit concluded that] . . . "the most reasonable interpretation of the relevant statutory provisions requires a sentencing court to assess the quantity of narcotics attributable to each coconspirator by relying on the principles set forth in *Pinkerton*." *Id.*, at 77.
>
> • • •

The principles outlined in *Pinkerton*, however, have no applicability to a conviction under § 846. *Pinkerton* principles are relevant when a conspirator is charged with a substantive offense arising from the actions of a coconspirator, not when a conspirator is charged with conspiracy. Because Count 1 charge[d] Collins with conspiracy (§ 846), and not a substantive offense, the district court's answer to the jury's question, as well as its original conspiracy instruction, is unassailable as a matter of law. This, however, does not end the inquiry. Although the district court correctly instructed the jury as to the elements of conspiracy, it erred by not issuing a further instruction relating to the factual predicate necessary for sentencing. . . . Under current precedent, rather than the district court applying *Pinkerton* principles when determining the appropriate sentence under § 841(b), that same court must instead instruct a jury to use *Pinkerton* principles when making the same determination. . . . By failing to instruct the jury . . . that, for purposes of setting a specific threshold drug quantity under § 841(b), the jury must determine what amount of cocaine base was attributable to Collins using *Pinkerton* principles [*i.e.*, other members of the conspiracy were involved in that amount, and those actions of coconspirators were both reasonably foreseeable and in furtherance of the jointly undertaken criminal activity], the district court's sentence effectively attributed to Collins, an individual member of the conspiracy, the quantity of cocaine base distributed by the entire conspiracy. . . . For these reasons, the district court's *sentence*, which was *based on the 10 year minimum set forth in § 841(b)(1)(A)*, cannot stand.

**Collins, 415 F.3d at 311-314 (internal citations, footnotes and quotations omitted).**

In the Petitioner's case, however, the verdict sheet specifically addressed the issue of "involvement:" "[D]id the conspiracy described in the

indictment involve at least five kilograms of cocaine?" "[D]id the conspiracy described in the indictment involve at least 1.5 kilograms of cocaine base?" **Verdict Sheet, filed January 23, 2001.** And, there was no question from the jury as to the Petitioner's individual involvement.

In fact, the Fourth Circuit noted that Odman argued "that the verdict form was defective because it did not ask the jury to determine the specific quantity of cocaine and crack attributable to him[.] . . . The verdict form required the jury to determine whether Odman was guilty of participation in a conspiracy involving the specific threshold amounts of cocaine or crack that justify an enhanced sentence under 21 U.S.C. § 841(b)." **Odman, 47 Fed. Appx. at 223.** The Fourth Circuit found no error, *i.e.*, the law at that time condoned the verdict form used. The fact that the law *may* have changed in light of subsequent precedent, is an issue which the Petitioner should pursue with the Fourth Circuit Court of Appeals.

In the direct appeal, the issue of whether the Government failed to provide *Brady* material was addressed and rejected. The Petitioner now raises the issue in a slightly different format: he now claims that the Government had exculpatory evidence that one or more of his co-conspirators attempted,

at an unspecified time, to draw him into a drug transaction and he declined to

do so. This evidence, he argues, proves that he withdrew from the conspiracy

prior to November 1995; thus, the superseding indictment, returned on

January 9, 2001, was outside the five year statute of limitations. Setting

aside the fact that no time period is specified as to the alleged "sting"

operation,[7]

> because [the] limitations period stops running when the original
> indictment is filed, a superseding indictment brought outside the
> five-year limitations period while an earlier indictment is still
> validly pending will nevertheless be timely . . . so long as it does
> not materially broaden the charges of the original indictment.
> When a superseding indictment is filed outside the limitations
> period but does not broaden the charges set forth in the original
> timely indictment, it is said to "relate back" to the filing of the
> original indictment.

*Garcia*, 268 F.3d at 411 (internal citations omitted). The undersigned has

previously determined that the superseding indictment did not materially

_____

[7]The evidence adduced by the Petitioner during cross-examination of his co-conspirators during the trial actually disproved his "sting" operation theory. Marilyn Chambers testified that her sister, Theresa Oates, had told her of being interviewed by Special Agent Felton. **Trial Transcript, Vol. III, at 305.** When asked if Felton offered Oates $10,000 to "set up" the Petitioner, Chambers testified "No. No, sir." *Id.* Chambers' testimony also established that the Petitioner continued to be involved with the conspiracy in 1996. *Id.,* **at 309.**

broaden the charges contained in the original indictment. The Petitioner's argument, therefore, fails.

Petitioner also claims that Eric Wheeler would have provided exculpatory testimony but the Government failed to produce him for trial. He has attached Wheeler's affidavit in which he avers that he told the prosecutor that he had never had drug transactions with the Petitioner. Petitioner argues that, based on this affidavit, the prosecutor decided not to bring Wheeler to Asheville as a Government witness for the trial. This conduct, the Petitioner argues, violates *Brady*. However, the Petitioner could have subpoenaed Wheeler but did not do so. And, the fact that Wheeler was unavailable to testify is of no moment in view of the overwhelming weight of the evidence against the Petitioner.

Petitioner also claims that the Government failed to produce Rule 35 motions, plea agreements and immunity agreements provided on behalf of certain Government witnesses. This, he argues, violated his right to impeach those witnesses. However, the Petitioner has failed to show that if disclosure of these items had occurred, the result of the proceeding would have been

different. **United States v. Marze**, 155 F.3d 562 (table), 1998 WL 454908, **1 (4th Cir. 1998) (citing *Jean v. Rice*, 945 F.2d 82, 87 (4th Cir. 1991)).

The next attack involves the Petitioner's allegation that the Government knowingly elicited perjured testimony from it's witnesses during the Petitioner's trial. This claim is based on a comparison of testimony from previous trials of co-defendants to the testimony provided during the Petitioner's trial.[8] From these comparisons, the Petitioner makes the leap that the prosecutor told the witnesses what to say in his trial, statements which he claims expounded on and enlarged previous testimony. However, the Petitioner's claims are disproved by the cross-examinations which he conducted himself during his trial. April Lockhart testified that the prosecutor never told her what to say. **Trial Transcript, Vol. III, at 329.** The Petitioner claimed that Tony Young testified that he did not know what a Rule 35 motion was. Young actually testified in response to the Petitioner's question that he did not know what his offense level was and that he had never been promised a sentence reduction by the Government in exchange for his

---

[8]The Petitioner attached as exhibits copies of portions of transcripts which he claims were from those previous trials. However, they are not in any manner authenticated or even identified as official records.

testimony. *Id.*, **at 168-69.** Anthony Blackwood was also characterized by

the Petitioner as testifying that he did not what a Rule 35 motion was.

Blackwood actually testified that "I don't know what I'm under. I don't know

much about these rules or anything. I just know I'm here to testify today."

*Id.*, **at 187.** In fact, Blackwood had himself been convicted by jury verdict in

1998, lending credence to his testimony that he was unsure of his offense

level. Robert Moore testified reluctantly due to his close relationship with the

Petitioner, whom he described as like an uncle to him. *Id.*, **at 205-08.**

Nonetheless, his testimony was damning to the Petitioner. The fact that

Young, Blackwood and Moore each received sentence reductions as a result of

their testimony against the Petitioner does not prove that any one of them

committed perjury. The Petitioner's claims of perjury are based on nothing

more than sheer speculation. ***United States v. White***, **238 F.3d 537, 540**

**(4th Cir. 2001) (Assuming *arguendo* that the allegation of perjury was true,**

**there was no reasonable likelihood that the false testimony could have**

**affected the judgment of the jury.);** *Woods v. United States*, **567 F.2d 861**

**(8th Cir. 1978) (Allegations of a "deal" in exchange for perjured testimony,**

**which are based on merely speculation, are insufficient.);** *accord, Romano v.*

*United States*, 460 F.2d 1198 (2d Cir. 1972); *Washington v. United States*, 291 F.Supp.2d 418 (W.D. Va. 2003) (petitioner's speculation is insufficient); *Franza v. Stinson*, 58 F.Supp.2d 124, 153 (S.D.N.Y. 1999).

The Petitioner's claim that the evidence at trial of cooking cocaine into "crack" impermissibly broadened the indictment is rejected. Likewise, his complaints that evidence was received concerning his connections in New Jersey and New York as well as evidence of hotel bills constituted evidence of other crimes is also rejected. Evidence of overt acts in furtherance of a conspiracy are admissible to prove both the existence and the scope of that conspiracy. *United States v. Lipford*, 203 F.3d 259, 265 (4th Cir. 2000). Likewise, evidence which is relevant to aid the jury's understanding of the scope and nature of the conspiracy is admissible. *United States v. Duran*, 407 F.3d 828 (7th Cir. 2005). Such evidence assists the jury in understanding how drug operations operate and is not prejudicial. *United States v. Pinillo-Prieto*, 419 F.3d 61, 71-72 (1st Cir. 2005); *accord, United States v. Johnson*, 132 Fed. Appx. 201 (10th Cir. 2005).

When the Petitioner refused the Government's offer to allow him to plead guilty to Count One of the original bill of indictment, the Assistant

United States Attorney superseded the indictment. The superseded indictment was actually less prejudicial to the Petitioner than the first since it dropped a manufacturing charge, a substantive charge of distribution and possession of cocaine base, a separate conspiracy charge and a money laundering charge. Nonetheless, the Petitioner claims the superseding indictment was done to punish him for refusing to enter into a plea agreement. Besides the fact that the superseding indictment dropped all charges except one conspiracy charge, the prosecutor explained that she superseded the indictment only to make it compliant with the then recent case of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court rejects the Petitioner's claim of prosecutorial misconduct. **United States v. Gastelum-Almeida, 298 F.3d 1167 (9th Cir. 2002) (There is no prosecutorial misconduct when a superseding indictment is filed after a defendant rejects a plea offer even where the prosecutor had promised not to supersede if the original offer were accepted.); United States v. Suarez, 263 F.3d 468 (6th Cir. 2001) (Threatening to supersede during plea negotiations is permissible as long as the new charges are supported by probable cause.); United States v. Lampley, 127 F.3d 1231 (10th Cir. 1997).**

The day before closing arguments in this case, the prosecutor asked the Court to instruct the Petitioner, who had conducted his own defense *pro se*, that he could not use closing arguments as an opportunity to testify without being under oath. **Trial Transcript, Vol. III, at 361.** The undersigned instructed the Petitioner that

> whatever argument [you] choose[] to make must be based on the evidence and the inference from the evidence, the evidence that has been introduced. And having chosen not to take the witness stand, you cannot testify in closing argument about matters that don't appear as a part of the evidence.

*Id.* During his closing argument, the Petitioner made the following statements to the jury:

> I don't endeavor to submit to you I did not sell or use drugs. I did. . . . Unknown to you and me and the majority of the American public, there is a more deadly disease [than the disease of AIDS]. This disease is known as conspiracy. . . . You and you alone have the power to stop this – this disease by returning a not guilty verdict every[] – every time you are faced with this scenario.
> 
> . . .
> 
> I was placed under constant surveillance from January '95 until November 1995, and with all this sophisticated devices and resources available and all the guidance of the experienced agents, not once did they recover any drugs from me[.] . . . If the government cannot get someone, they say they conspired, and then they proceed to line up a litany of witnesses to testify to one's conduct.
> 
> . . .

> The evidence is without dispute that my involvement culminated in November of 1995 upon my return home. When I left here in November 1995, TJ is the one who continued his activity independently and on his own. . . . I accept the fact I supplied narcotics, but I had no single unified agreement with all of these people. Neither did I participate in their scheme to distribute.

**Trial Transcript, Vol. IV, at 371-72, 373, 375.** Prior to this closing

argument by the Petitioner, the prosecutor explained to the jury that he might

do the very thing that he did: testify through closing argument.

> We had a little interesting turn of events when the defendant determined that he wanted to represent himself, and that is certainly a right that he has. It makes things different here because obviously, . . . there are a lot of rules and procedures that have to be followed. . . . During the course of the evidence in this case, the defendant chose not to testify, which is a constitutional right that he has. He will have an opportunity in a few moments to make an argument to you. During the course of his argument, as in any argument . . . that I have with you, we are by law to refer only to what was heard from the witness stand. . . . [I]n trying to be deferential to the defendant and in giving him the leeway as someone who's not formally trained in law, I don't want to do a lot of objecting, but I want to . . . make it very clear to you that the defendant's argument is not his opportunity to tell you his side of the story. If the defendant wanted to tell you his side of the story, he had a right to take the stand just as he has a right not to take the witness. But to stand before you and argue, to tell his side of the story not under oath and not subject to cross examination, is not proper and it's not evidence.

*Id.*, at 369-70. The prosecutor's comments were prescient; the Petitioner did

exactly what she warned he might do. He now claims this was improper

comment on his failure to take the witness stand and testify. It was, in fact,

merely a caution to the jury that the Petitioner might try to testify during

closing argument without having been sworn under oath. The Court rejects

this claim. **United States v. Warner, 428 F.2d 730, 739 (8th Cir. 1970)**

**(prosecutor may argue that a defendant's comments are not evidence);**

**People v. Kevorkian, 639 N.W.2d 291, 329 (Mich. App. 2001)**

**("Defendant's decision to testify to the jury during closing argument rather**

**than commenting on the evidence . . . prompted the prosecutor's**

**response."); United States ex rel. Miller v. Follette, 278 F. Supp. 1003**

**(E.D.N.Y.), aff'd, 397 F.2d 363 (2d Cir. 1968) (The prosecution may**

**comment to the jury that the defendant's statements were not given under**

**oath or subject to cross-examination.).**

The Court finds the remaining arguments raised by the Petitioner are

either frivolous, were addressed on direct appeal, or both. As a result, all

such claims are rejected. The Court notes that the Petitioner supplemented

his petition to add arguments based on *Apprendi, supra, Blakely v.*

*Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 125 S. Ct.

738 (2005). None of these cases has been made retroactive to cases on

collateral review, such as the Petitioner's motion pursuant to § 2255. *United States v. Morris*, 429 F.3d 65 (4th Cir. 2005) (Although *Booker* is a new rule of constitutional law, it is not a watershed rule and, therefore, does not apply retroactively to cases on collateral review.); *United States v. Fowler*, 133 Fed. Appx. 922 (4th Cir. 2005) (*Blakely* did not announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005."); *In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005); *San-Miguel v. Dove*, 291 F.3d 257 (4th Cir. 2002) (*Apprendi* not retroactive).

Finally, the Court notes this motion was accompanied by a brief of 100 pages in length to which were attached voluminous exhibits. After that initial filing, the Petitioner made four supplemental filings, each of which is denied. As a result of the Petitioner's past abusive filings, the undersigned will not entertain post-judgment filings absent permission from the Court. Any request for the same may not exceed 5 double-spaced pages.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion pursuant to 28 U.S.C. §2255 is hereby **DENIED**. A Judgment dismissing this action is filed herewith.

**IT IS FURTHER ORDERED** that the Petitioner's motion for evidentiary hearing filed March 11, 2004, his motion for leave to commence discovery and request for admissions filed March 29, 2004, his motion to amend filed May 5, 2004, and his motion for a Magistrate Judge to conduct an evidentiary hearing filed June 3, 2004, are hereby **DENIED**.

**IT IS FURTHER ORDERED** that no post-judgment filings may be made by the Petitioner absent permission from this Court. Any such request must be limited to 5 double-spaced pages in length. Failure to abide by this directive will result in summary dismissal.

The Clerk of Court is instructed to mail copies of this Memorandum and Order and accompanying Judgment to the Petitioner, Sean Devereux, Attorney at Law, and the United States Attorney.

**Signed: December 9, 2005**

Lacy H. Thornburg
United States District Judge